IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 19, 2026 Session

**STATE OF TENNESSEE v. THOMAS KOONTZ**

**Appeal from the Criminal Court for Hamblen County**
**No. 20CR056, 22CR137    John F. Dugger, Jr., Judge**

_____

**No. E2025-01042-CCA-R3-CD**

_____

Defendant, Thomas Koontz, appeals the judgment of the Criminal Court for Hamblen County revoking his probation and ordering execution of his original eight-year, six-month sentence. He argues that the trial court (1) imposed an illegal sentence by altering his release eligibility from thirty percent to one hundred percent, and (2) failed to make the requisite findings on the record to justify ordering him to serve the entire sentence in confinement. Following our review of the record, the arguments and briefs of the parties, and the applicable law, we affirm the trial court's finding that Defendant violated his probation and the revocation of probation; however, the trial court failed to articulate sufficient findings regarding the consequences imposed, as required by *State v. Dagnan*, 641 S.W.3d 751 (Tenn. 2022). Because the record is insufficiently developed for meaningful de novo review, we remand for entry of findings on the record consistent with *Dagnan*.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Remanded**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and MATTHEW J. WILSON, J., joined.

Todd Estep, District Public Defender; and Colby A. Collins, Assistant District Public Defender, for the appellant, Thomas Koontz.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Dustin Click, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

On July 22, 2022, Defendant pled guilty to possession of methamphetamine in Case No. 20CR056 and resisting arrest in Case No. 22CR137.[1] The trial court imposed an effective sentence of eight years and six months, fully suspended to supervised probation, with a Range One thirty percent release-eligibility classification as reflected in the judgment forms. On July 25, 2023, a probation violation warrant was issued alleging Defendant violated Rule 1 of his probation based on a domestic assault arrest in Knox County; violated Rule 2 by failing to report that arrest; and violated Rule 14 by engaging in assaultive, abusive, threatening, or intimidating behavior that posed a threat to others or himself. That warrant was later amended October 30, 2023, to add an allegation that Defendant violated Rule 6 by absconding when he failed to turn himself in. The warrant was again amended February 12, 2025, alleging additional violations of Rule 1 based on two new misdemeanor domestic assault charges in Knox County and several new felony charges from Lee County, Virginia—possession of a stolen vehicle, felony eluding, and possession of ammunition by a convicted felon.

At the July 2, 2025 hearing, Defendant admitted he pled guilty to the Virginia felony charges and received a ten-year partially suspended sentence. His trial counsel stated that the Knox County domestic assault charges were dismissed. Defendant acknowledged he had violated his probation by committing felonies in Virginia. The trial court then stated: "You got out and get a 10-year sentence on probation that violates your probation. So I find that you violated your probation, sentence is reinstated. I give you credit for all the time served. That's it."

The probation revocation order shows: "Probation violated, sentence reinstated 100%, credit time served." The mittimus issued the same day and signed by the trial court notes Defendant was sentenced to "8 [y]ears plus 6 months in State Penitentiary," and "100% R[elease].E[ligibility].D[ate]. "

Defendant filed a timely notice of appeal.

## Analysis

On appeal, Defendant asserts that the trial court imposed an illegal sentence by increasing his release-eligibility percentage from thirty percent to one hundred percent

---

[1] Because the transcript of the plea colloquy is not in the record, we do not have a record of the underlying facts supporting Defendant's guilty pleas.

via a judge-signed mittimus. He also argues that the trial court erred by ordering execution of his entire sentence without making the findings required under *Dagnan*. The State responds that because the mittimus is not the judgment of the court, it does not affect Defendant's sentence. Additionally, the State notes that this issue is not ripe for review absent unlawful confinement. The State concedes the trial court made inadequate findings under *Dagnan* but urges de novo review.

## I. Effect of Mittimus on Defendant's Sentence

After determining Defendant had committed new criminal offenses while on probation, the trial court was authorized to revoke probation and require Defendant "to commence the execution of the judgment as originally entered." T.C.A. § 40-35-311(e)(1)(A). The court stated at the revocation hearing that the sentence was "reinstated." The judgment in the record shows that Defendant's release eligibility was set at thirty percent. However, the mittimus entered after the probation violation hearing reflects a one-hundred-percent release eligibility date.

A mittimus functions as the procedural mechanism through which a judgment is put into effect. As the Court of Appeals has explained, "A mittimus is similar to an execution after judgment in a civil case. It is the means by which the judgment of the court is carried out." *Richmond v. Barksdale*, 688 S.W.2d 86, 88 (Tenn. Ct. App. 1984). Statute likewise requires that the document committing a defendant to custody be filed and maintained. T.C.A. § 41-4-106. A mittimus constitutes an "affidavit[ ] to the sheriff or jailer as to the defendant's sentence," and is "essentially directory in nature." *Carr v. Mills*, No. E2000-00156-CCA-R3-PC, 2000 WL 1520267, at *1 (Tenn. Crim. App. Oct. 13, 2000). Its purpose is straightforward: "to tell the sheriff…who[m] he is to take into custody, why he is to take him, where he is to take him, and for how long." *Richmond*, 688 S.W.2d at 88. But the mittimus is not a judgment, and it "does not require a judge's signature." *Carr*, 2000 WL 1520267, at *1.

Because a mittimus merely implements a court's judgment, it is void whenever it conflicts with the judgment it is intended to carry out. The United States Supreme Court has explained that "the only sentence known to the law is the sentence or judgment entered upon the records of the court," and that a mittimus inconsistent with that judgment "is void." *Hill v. United States ex rel. Wampler*, 298 U.S. 460, 464-65 (1936). Tennessee courts apply the same principle. *See Matthew v. Noles*, No. 02 C01-9206-CC-00140, 1993 WL 46546, at *2 (Tenn. Crim. App. Feb. 24, 1993) ("Technical violations related to the . . . committal documents, even if they existed, would not render the petitioner's confinement illegal as long as a valid conviction and resultant legal sentence were imposed."); *Richmond*, 688 S.W.2d at 89 ("[T]he mittimus is a ministerial order, an error in the mittimus that is contrary to the judgment should not

vitiate the judgment—i.e., the order of confinement."). The State correctly notes that the trial court did not change Defendant's release eligibility percentage. To the extent the mittimus lists a different release eligibility percentage than the judgment, it is void under *Wampler*, *Noles*, and *Richmond*.

In *State v. Lawson*, this court confronted nearly the same fact pattern from the same trial court: after revocation, the clerk issued a mittimus indicating "R.E.D. 100%," while the judgment reflected thirty-five percent release eligibility. We rejected the defendant's claim that the mittimus altered his sentence, reiterating that a mittimus "is essentially directory in nature" and does not constitute a judgment. 2022 WL 3592675, at *9 (Tenn. Crim. App. Aug. 23, 2022) (stating that errors in a mittimus "should not vitiate the judgment"). The judgment controls, and any inconsistency in the mittimus is void.

The situation here mirrors *Lawson*: the original judgment forms reflect a Range One thirty percent release eligibility classification, and nothing in the revocation hearing indicates that the trial court orally resentenced Defendant or altered his offender classification. Instead, the trial court said only, "[S]entence is reinstated. I give you credit for all the time served. That's it." Defendant argues that his case is distinguishable from *Lawson* because the mittimus in the present case bears the judge's signature. Although *Lawson* observed the mittimus in that case bore only the clerk's signature, the disposition in *Lawson* did not turn on that detail. The reasoning instead relied on the distinction between a judgment and a mittimus: the former indicates the court's adjudication, and the latter merely communicates that adjudication to the local custodian; a signature on a mittimus does not create a material difference. The mittimus here does not override or amend Defendant's judgment of conviction, and the notation ("100% R.E.D.") on this mittimus has no operative effect.

Moreover, Defendant did not challenge the mittimus in the trial court. And even if the mittimus were defective, such issues become ripe only if the State relies on an erroneous mittimus to confine a defendant beyond what the judgment allows. *See Wampler*, 298 U.S. at 467. The record here contains no indication that Defendant has been, or is in danger of being, held beyond the thirty percent release eligibility stated in the judgment. In fact, at oral argument, appellate counsel acknowledged that Defendant had an upcoming parole hearing scheduled.

Because the judgment form reflects a thirty percent release eligibility, and because the mittimus cannot alter the judgment, Defendant is not entitled to relief.

## II. Lack of Required Findings Under *Dagnan*

A trial court may revoke probation upon finding by a preponderance of the evidence that a defendant violated a condition of probation. *See* T.C.A. § 40-35-311(d)(1); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Under *Dagnan*, a trial court must make findings addressing two steps: whether to revoke probation and, if so, what consequence to impose. 641 S.W.3d at 757. Once revocation is determined, the court must articulate on the record its reasoning for the sanction selected. *Id.* at 758. Available consequences include ordering a period of incarceration, executing the original sentence, extending probation up to two years, or returning the defendant to probation with modified conditions. *State v. Daniel*, No. M2021-01122-CCA-R3-CD, 2022 WL 6644369, at *2 (Tenn. Crim. App. Oct. 11, 2022) (quoting *Dagnan*, 641 S.W.3d at 756).

We review a revocation decision for abuse of discretion with a presumption of reasonableness when the trial court states adequate findings supporting both the revocation and the consequence imposed. *Dagnan*, 641 S.W.3d at 759. If the court fails to provide those findings, the appellate court may conduct a de novo review only when the record is sufficiently developed; otherwise, the case must be remanded. *Id.* (citing *State v. King*, 432 S.W.3d 316, 327–28 (Tenn. 2014)); *see also State v. Stewart*, No. M2021-00595-CCA-R3-CD, 2022 WL 1236982, at *3 (Tenn. Crim. App. Apr. 27, 2022). A trial court abuses its discretion when its decision lacks substantial supporting evidence, applies incorrect legal standards, reaches an illogical result, rests on a clearly erroneous assessment of the proof, or causes an injustice. *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011); *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

Here, Defendant expressly admitted at the hearing he had violated the conditions of his probation when he pled guilty to new felony offenses in Virginia. Defendant's appeal focuses solely on the second prong of the *Dagnan* analysis, which requires the trial court to articulate on the record its reasons supporting the consequence imposed. This step is reviewed for abuse of discretion only if the trial court provides sufficient findings and reasons for its decision. *Dagnan*, 641 S.W.3d at 759. This court recently reiterated this requirement in *State v. Martin*, where the trial court revoked probation and ordered full confinement but provided no reasoning for its decision. No. M2024-00876-CCA-R3-CD, 2025 WL 574301 (Tenn. Crim. App. Feb. 21, 2025), *no perm. app. filed*. In *Martin*, we held that merely recognizing that the evidence established a violation does not satisfy the trial court's obligation to explain why the chosen consequence is appropriate. *Id.*, at *4. Even when multiple prior violations exist, some articulation of the basis for the sanction is required before appellate courts may defer to the trial court's discretion.

Here, after Defendant admitted his Virginia convictions, the trial court's limited ruling was: "You got out and get a 10-year sentence on probation that violates your probation. So I find that you violated your probation, sentence is reinstated. I give you credit for all the time served. That's it." The record contains no discussion of Defendant's amenability to continued supervision, the severity or significance of the new criminal conduct, any public-safety concerns, or whether less restrictive sanctions were considered and found inadequate. *See State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022); *see also Dagnan*, 641 S.W.3d at 759 n.5.

The State contends that the record is adequate for this court to conduct a de novo review. However, de novo review is appropriate only when the record is sufficiently developed to permit meaningful appellate consideration of the appropriate consequence. *Martin*, 2025 WL 574301, at *4. Although the record in *Martin* contained more information than the record before us, the panel nevertheless concluded that the trial court's failure to make the necessary *Dagnan* findings precluded substitution of appellate judgment for the trial court's discretion. Likewise, in *Lawson*, this court rejected the notion that an appellate court may infer reasoning from a sparse record, reiterating that the trial court itself must articulate its rationale and that appellate courts may not supply missing findings. 2022 WL 3592675, at *5–7.

In this case, the record is even less developed than the records at issue in *Martin* and *Lawson*. No probation officer testified. No evidence was offered concerning Defendant's supervision history, risk level, prior compliance or noncompliance, or any rehabilitative or supervisory efforts attempted during the probationary period. The trial court made no reference to alternatives to confinement and did not address whether any lesser sanction could have achieved the goals of sentencing. Given this limited record, meaningful de novo review is not possible. Thus, we remand for the trial court to comply with the second step of the *Dagnan* analysis and place its findings and reasoning on the record regarding the consequence imposed.

## CONCLUSION

The judgment of revocation is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

s/*Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE

- 6 -